UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JIDEOFOR AJAELO,
CDCR #F-73516,

Plaintiff,

v.

J. FLORES; J. BONILLAS; J. GASCON, A. GREEN, Warden,

Defendants.

Case No.: 26-cv-4731-AJB-MMP

**ORDER:**

**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS; AND**

**(2) SCREENING COMPLAINT AND DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF PROCESS PURSUANT TO 28 U.S.C. § 1915(d) AND Fed. R. Civ. P. 4(c)(3)**

**(Doc. No. 2)**

Plaintiff Jideofor Ajaelo is a state prisoner at Centinela State Prison ("CSP") proceeding *pro se* with a civil rights Complaint pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) Plaintiff has also filed a motion to proceed *in forma pauperis* ("IFP"). (Doc. No. 2.)

## I. MOTION TO PROCEED IFP

Generally, anyone initiating a civil action in a U.S. district court must pay a $405 filing fee, which includes a $350 statutory fee and a $55 administrative fee (although anyone granted IFP status is excused from paying the administrative fee). *See* 28 U.S.C.

§ 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). If a plaintiff fails to prepay the entire fee, the lawsuit will not go forward unless the plaintiff's IFP motion is granted under 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).

A prisoner filing an IFP motion must submit a "certified copy of the trust fund account statement (or institutional equivalent)," which must cover "the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).

Even if the court grants IFP status, the prisoner must pay the statutory filing fee. Payments, however, are determined based on the prisoner's available resources. The determination is as follows. First, courts calculate an initial filing fee payment. This initial fee is twenty percent of the larger of two amounts: either the average monthly deposits in the trust fund account over the past six months, or the average monthly balance in the account for the past six months. *See* 28 U.S.C. § 1915(b)(1), (4); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016). Nevertheless, if a prisoner plaintiff has insufficient assets, no initial filing fee is required. Second, once the IFP motion is granted and the initial fee is charged, the remaining balance must be paid in installments. 28 U.S.C. § 1915(b)(1)–(2); *Bruce*, 577 U.S. at 84.

Plaintiff's IFP motion includes a copy of his California Department of Corrections and Rehabilitation ("CDCR") Inmate Statement Report and Prison Certificate attested to by a CDCR trust account official. (Doc. No. 3 at 1–4.) His average monthly balance is $173.54, his monthly deposits average $204.17, and his available balance is $3.14. (*Id*. at 4.) Accordingly, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (Doc. No. 2) and assesses an initial partial filing fee of $40.83 pursuant to 28 U.S.C. § 1915(b)(1). This initial fee need be collected, however, only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by

which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered."). The CDCR must thereafter collect the full balance of the $350 total fee owed in this case and forward payments to the Clerk of the Court as provided by 28 U.S.C. § 1915(b)(2).

## II. SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2) & 1915A(a)

### A. Standard of Review

Because Plaintiff is a prisoner proceeding IFP, federal law requires pre-screening of Plaintiff's claims before any defendants are required to file an answer. 28 U.S.C. §§ 1915(e)(2), 1915A(b). Pre-screening means that the Court must dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citation omitted). Likewise, § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).

Rule 12(b)(6) requires that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (citing 42 U.S.C. § 1983). The statute, though "not itself a source of substantive rights, . . . provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (citation and internal quotation marks omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011).

Complaints filed *pro se* must be "liberally construed, particularly where civil rights claims are involved." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citations omitted).

**B. Allegations in the Complaint**

Plaintiff's claims are directed at four CSP staff members: Correctional Officer J. Flores, Correctional Lieutenant J. Bonillas, Correctional Officer J. Gascon, and Warden A. Green. (Doc. No. 1 at 2.)

Plaintiff, who is Black, indicates that—until recent staff interventions—"he had worn a durag on the [CSP] yard for 14 straight years without an issue." (*Id.* at 5; *see also id.* at 6.) His Complaint alleges that durags[1] are not prohibited by CDCR policy, which only limits head coverings "that would obscure identity or facials features." (*Id.* at 5.) Plaintiff further states that durags are "marketed to and historically worn by Black people to accommodate their distinctive hair texture and styles." (*Id.* at 6.) He reiterates that the durag "is worn for both practical and cultural reasons, largely due to the unique texture and needs of Black hair which often tend to be more coily and prone to

[1] Also spelled "do-rag," a durag is "a close-fitting, typically stretchable piece of cloth that is worn on the head (as to hold a hairstyle in place) and that usually has long ends which are tied in the back." *Do-rag*, Merriam-Webster, https://www.merriam-webster.com/dictionary/durag (last visited Sept. 30, 2026).

dryness." (*Id.*)

In support of the practical and cultural links between such head coverings and "Black identity and grooming practices," the Complaint cites "academic literature," including two books that explore "Black hair practices." (*Id.* at 7.) Plaintiff also indicates that durags "are approved by the" CDCR and "sold in the Centinela canteen." (*Id.* at 4.) Plaintiff further represents that he "intentionally wore a durag to communicate pride in Black cultural identity and opposition to unfair treatment." (*Id.* at 10.)

**1. The August 9, 2024 Incident**

On August 9, 2024, Plaintiff was on a CSP recreation "yard wearing a durag head cover" when Officer Flores allegedly gave him "a direct order via the public address system to remove his 'wave cap.'" (*Id.* at 3.) Plaintiff was allegedly confused by this order, describing it as "unintelligible" since Plaintiff "never had on a wave cap; [he] was wearing a durag." (*Id.*) Flores issued Plaintiff a "Rules Violation Report (RVR)." (*Id.*)

**2. The August 21, 2024 Hearing**

Flores's RVR against Plaintiff was addressed at a hearing held on August 21, 2024, which was presided over by Defendant Bonillas in the role of Senior Hearing Officer ("SHO"). (*Id.* at 4.) When video evidence led SHO Bonillas to agree with Plaintiff that "he was not wearing a wave cap," but was instead wearing a durag, Defendant Gascon allegedly "waved his hand instructing the SHO to end the hearing as Plaintiff was presenting his defense." (*Id.*) SHO Bonillas then found Plaintiff guilty. (*Id.*) Plaintiff states that he submitted evidence "showcasing the difference between a durag and a wave cap," CSP's "head cover policy," a grievance log with another prisoner's successful challenge to CSP's wave cap rule, and evidence showing durags are approved and sold at the CSP canteen. (*Id.*)

Plaintiff alleges that Defendants are operating under an "unwritten and racially discriminatory policy that is inconsistently and selectively enforced" against Black prisoners. (*Id.* at 6.) His Complaint contends that the unwritten no-durags-on-the-recreation-yard policy is "unwarranted and serves no penological interest." (*Id.* at 1.)

Plaintiff raises constitutional claims under the First Amendment, Equal Protection, and Due Process. (*Id.* at 3–12.) And Plaintiff specifies that he sues Warden Green in his official capacity, stating that as Warden, Green "is the chief executive officer of Centinela and is responsible for authorization of operational procedures at Centinela. He is the sole person who signs authorization for the head cover policy/procedure that staff continually rely on." (*Id.* at 12.) Plaintiff seeks injunctive relief and punitive and compensatory damages of $350,000. (*Id.* at 15.)

**3. Related Lawsuit**

In a separate lawsuit, (*see* Doc. No. 5 (notice of related case)), Plaintiff challenges CSP staff's actions about three months earlier, when he wore a durag to yard recreation on January 13, 2024. *See Ajaelo v. Estrada*, *et al.*, No. 24-cv-2472-AJB-MMP (S.D. Cal.) ("*Ajaelo I*"). In that case, another CSP officer, on January 13, 2024, ordered Plaintiff to remove his durag or leave the recreation yard. *See Ajaelo I*, Doc. No. 26 at *3 (July 28, 2026) (report and recommendations summarizing allegations). When that officer issued Plaintiff an RVR, other CSP personnel took part in a disciplinary hearing where a charge against him was sustained. *Id.* at *4. Upon screening Plaintiff's original complaint, the Court, in pertinent part, "found Plaintiff met the 'low threshold' to survive screening" with respect to violations of his First Amendment right to freedom of expression and his Fourteenth Amendment right to equal protection. *Ajaelo I*, Doc. No. 4 at 7 (quoting *Watison*, 668 F.3d at 1112, 1114–15; *Wilhelm*, 680 F.3d at 1123). Litigation in *Ajaelo I* is ongoing.

**C. Discussion**

Here, Plaintiff raises claims under the First Amendment and the Fourteenth Amendment (alleging both equal protection and due process violations). As in *Ajaelo I*, this Court again finds Plaintiff meets the screening threshold for his freedom of expression and equal protection claims. The Court, however, finds that he fails to state a claim with respect to any alleged due process violation. That claim is therefore dismissed. Service is ordered with respect to the surviving claims.

**1. First Amendment Freedom of Expression Claim**

As in *Ajaelo I*, Plaintiff alleges here that enforcement of the unwritten durag policy violates his right to free expression. (*See* Doc. No. 1 at 1, 10–11.) Prisoners retain limited First Amendment rights to free expression and association. *See Ajaelo I*, Doc. No. 5 at *5 (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)). A prison regulation can impinge on inmate expression in violation of the First Amendment if: (1) the "the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational," (2) it deprives the inmate of all means of expression and other avenues of expression are unavailable, and (3) the impact "on guards and other inmates, and on the allocation of prison resources generally[,]" is minimal; and (4) the rule at issue is an "exaggerated response to prison concerns." *Turner v. Safley*, 482 U.S. 78, 89–90 (1987).

Like *Ajaelo I*, Plaintiff's current Complaint also overcomes §§ 1915(e)(2) and 1915A(a)'s "low threshold" for screening. *Watison*, 668 F.3d at 1112, 1114–15; *Wilhelm*, 680 F.3d at 1123. Specifically, Plaintiff plausibly alleges Defendants violated his First Amendment right to free expression when they enforced an unofficial regulation prohibiting him from wearing a durag on the yard. He has also adequately alleged the lack of a legitimate penological interest in the enforcement of that regulation by noting that such head coverings are sold by the prison itself. (*See* Doc. No. 1 at 4.) Plaintiff further alleges the prohibition at issue is not rationally related to a legitimate and neutral government objective. Thus, his Complaint survives screening as required by 28 U.S.C. §§ 1915(e)(2) & 1915A(b) with respect to his First Amendment free expression claims. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1123; *Turner*, 482 U.S. 78, 89–90.

**2. Fourteenth Amendment Equal Protection Claim**

As in *Ajaelo I*, Plaintiff also raises an equal protection claim. (Doc. No. 1 at 8–10.) The Equal Protection Clause of the Fourteenth Amendment requires people who are similarly situated to be treated alike. *See Ajaelo I*, Doc. No. 4 at *6 (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). A plaintiff can state an equal protection claim by setting forth facts which plausibly allege intentional discrimination

based on membership in a protected class. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) ("Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status."); *Fields v. Legacy Health Sys.*, 413 F.3d 943, 955 (9th Cir. 2005) (identifying "race, alienage, national origin" as examples of characteristics protected by the Equal Protection Clause).

Here, Plaintiff alleges Defendants prevented him from, and disciplined him for, wearing a CDCR-approved head covering on the yard, which he and other Black inmates have worn for practical and cultural reasons for years without incident. He further contends Defendants enforced an unofficial internal prison operating procedure prohibiting those head coverings on the yard, while allowing non-Black inmates to wear similar head coverings, like "straw hats, bandannas, and handkerchiefs." (Doc. No. 1 at 8.) These factual allegations are also sufficient to plausibly show a Fourteenth Amendment equal protection violation. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1123; *Hartmann*, 707 F.3d at 1123; *Maynard*, 37 F.3d at 1404.

**3. Due Process**

Finally, Plaintiff raises a due process claim in relation to the RVR hearing. (Doc. No. 1 at 4–7.) "The Fourteenth Amendment protects individuals against the deprivation of liberty or property by the government without due process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). To state a claim, Plaintiff must allege "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Id.* Prisoners have due process protections in disciplinary hearings but only "when the disciplinary action implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "If no such liberty interest is implicated, a prisoner is granted minimum due process, which requires only that the outcome be 'supported by some evidence in the

record.'" *Jackson v. Hill*, No. 24-cv-1824-WQH-JLB, 2024 WL 4757600, at *3 (S.D. Cal. Nov. 12, 2024) (quoting *Superintendent v. Hill*, 472 U.S. 445, 454–55 (1985)).

Even construing the Complaint liberally, as it must, the Court finds Plaintiff fails to state a viable due process claim upon which § 1983 relief can be granted. First, he does not allege his disciplinary proceedings implicated a protected liberty interest. Nor does the Court detect one based on its review of the Complaint. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) ("The Supreme Court has identified few protected liberty interests."). First, simply being placed in disciplinary proceedings does not give rise to a liberty interest protected by the Due Process Clause. *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (Prisoners have no constitutional right or interest independently protected by the Due Process Clause to be free from discipline or placement in administrative segregation.); *Tyler v. Lewis*, No. 23-CV-2278-BAS-MMP, 2024 WL 3557454, at *4 (S.D. Cal. July 25, 2024) (dismissing due process claim upon screening where "confinement in isolation" for 77 days did not give rise to protected liberty interest).

Second, Plaintiff also fails to allege any liberty interest arising from state law. The existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. *Sandin*, 515 U.S. at 481–84. Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. And when determining whether an alleged deprivation imposed an "atypical and significant hardship," a court examines the conditions of the confinement, the duration and degree of the restraint, and whether the duration of the inmate's sentence will be affected. *See Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (quoting *Sandin*, 515 U.S. at 486–87). Since Plaintiff does not indicate what, if any, punishment was imposed in the RVR process, he has not alleged that he suffered any atypical and significant hardship or any effect on the duration of his sentence. As such, as currently pleaded, he fails to allege sufficient facts to plausibly allege he was deprived of a protected liberty interest. *See Wise v. Wash. State Dep't of Corr.*, 244 F. App'x 106, 108 (9th Cir. 2007) (concluding the

district court properly dismissed a due process claim where the inmate failed to state any facts indicating that the conditions of segregation or isolation constituted an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life").

Had the requisite showing of a protected liberty interest been made, Plaintiff still has not adequately alleged he was deprived of that interest without a hearing governed by the procedures mandated in *Wolff v. McDonnell,* 418 U.S. 539 (1974). Under *Wolff*, once a prisoner establishes a protected liberty interest, he is entitled to minimal due process protections, including the right to call witnesses, to present documentary evidence, and to have a written statement by the fact finder as to the evidence relied upon along with the reasons for the disciplinary action taken. *See id.* at 564–71. Further, notwithstanding the procedural safeguards provided by *Wolff*, "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board." *Hill*, 472 U.S. at 455.

Here, Plaintiff alleges his RVR hearing was flawed because he was found guilty of wearing a wave cap based on an "unintelligible order" issued by Defendant Flores. (Doc. No. 1 at 4–5.) But he does not plausibly allege he was denied minimum due process or that the hearing's outcome was not "supported by some evidence in the record." *Hill*, 472 U.S. at 454–55. While Plaintiff does allege Defendants curtailed presentation of his case, he does not dispute that he presented argument and evidence and cross-examined Defendant Flores. (Doc. No. 1 at 3–5.) As to "some evidence," the Complaint acknowledges that the SHO heard testimony from Officer Flores that *neither* wave caps nor durags were allowed on the CSP yard. (*Id.* at 3.) Therefore, to the extent Plaintiff based his RVR defense on the distinction between the two types of head coverings but does not dispute he was wearing a durag on the yard in violation stated CSP policy, his Complaint fails to plausibly allege his disciplinary conviction was not supported by some evidence. *See Hill*, 472 U.S. at 454–55. Accordingly, Plaintiff's due process claim is dismissed. *See* 28 U.S.C. § 1915A; *Wilhelm*, 680 F.3d at 1121.

## III. CONCLUSION AND ORDER

Accordingly, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a). (Doc. No. 2).

2. **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $40.83 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, via U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4. **DISMISSES** Plaintiff's due process claim as to all Defendants pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

5. **DIRECTS** the Clerk to issue a summons as to Plaintiff's Complaint (Doc. No. 1) for all four Defendants and forward it to Plaintiff along with four blank U.S. Marshal Form 285s for these Defendants. The Clerk will provide Plaintiff with certified copies of his Complaint and the summons so that he may serve the Defendants. Upon receipt of this "In Forma Pauperis Package," Plaintiff must complete the USM Form 285s as completely and accurately as possible, *include an address where Defendants may be found and/or subject to service* pursuant to S.D. Cal. CivLR 4.1(c), and return the form to the United States Marshal according to the instructions the Clerk provides in the letter accompanying the In Forma Pauperis Package.

6. **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon Defendants as directed by Plaintiff on the USM Form 285s provided. All service costs will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

7. **ORDERS** Defendants, once served, to reply to Plaintiff's Complaint and any

subsequent pleading Plaintiff files in this matter in which Defendants are named as a party within the time provided by the applicable provisions of Federal Rules of Civil Procedure 12(a) and 15(a)(3). *See* 42 U.S.C. § 1997e(g)(2) (while Defendants may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its *sua sponte* screening, Defendants are required to respond).

8. **ORDERS** Plaintiff, after service, to serve upon Defendants, or if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk, a certificate stating the manner in which a true and correct copy of that document has been served on Defendants or Defendants' counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk, or which fails to include a Certificate of Service upon Defendants or Defendants' counsel, may be disregarded.

**IT IS SO ORDERED**.

Dated: October 7, 2026

Hon. Anthony J. Battaglia
United States District Judge